OPINION OF THE COURT
John R. Schwartz, J.
The issue here is what sanctions, if any, should be imposed upon the prosecution of these actions as a result of a police officer’s going to three Judges of coordinate jurisdiction to *107 obtain arrest warrants, and a search warrant of the premises known as 547 State Street, Rochester, New York.
The defendants ask that the evidence seized be suppressed and the information dismissed. The People oppose.
According to the affidavits submitted on the motions, the undisputed facts are as follows:
On November 14, 1985, Police Officer Gregory Raggi applied to the "ex parte” Rochester City Court Judge* for a search warrant to search the above-named premises for beer, wine, liquor and currency in connection with the alleged sale of alcoholic beverages without a license in violation of Alcoholic Beverage Control Law § 100 (1). He also applied for arrest warrants for the defendants for violating Alcoholic Beverage Control Law § 100 (1). The "ex parte” City Court Judge advised the officer that the informations were "thin” and that he felt that the portion of the search warrant application entitled "license check” was insufficient and that an affidavit would be required from the State Liquor Authority stating whether the premises had a license or not. He would not sign the warrants in the form presented. The Judge further advised the officer to show the search warrant application to someone from the Monroe County District Attorney’s office for assistance in preparing the application. Thereafter, the officer went directly to the District Attorney’s office and spoke to the Assistant District Attorney in charge of Special Criminal Investigation Cases (the Vice Unit). The officer explained to the Assistant District Attorney the Judge’s concerns. The Assistant District Attorney involved reviewed the search warrant application and advised the officer that in his opinion, the application was sufficient and that the section regarding "license check” could be sworn to upon information and belief. The Assistant District Attorney did however advise the officer to comply with the Judge’s request, if possible, and return to the same Judge with the new application.
Instead of complying with the Judge’s direction and the advice of the Assistant District Attorney, the police officer then went to his supervisor who called another City Court Judge to see if he would sign the warrants. That Judge was never shown the warrants but it is alleged in the police officer’s affidavit that the Judge advised the supervisor that "if *108 another Judge is approached, that it not be a City Court Judge”. The police officer then went to a County Court Judge with the same warrant applications with only one change: the name of the person the police officer talked with at the State Liquor Authority had been inserted. No affidavit by someone from the State Liquor Authority was submitted as requested by the first Judge. It is alleged that the County Court Judge was advised that a City Court Judge refused to sign the warrants but the application for the warrants did not contain a statement that a prior application was made and denied by another Judge. The County Court Judge signed the arrest warrants and the search warrant. The premises were searched pursuant to the warrant, alcoholic beverages were seized, and the defendants were charged with one count each of violating Alcoholic Beverage Control Law § 100 (1) — an unclassified misdemeanor.
Each of the defendants now moves before this court to dismiss the informations as insufficient and to suppress the evidence seized pursuant to CPL 170.30 and 710.20, respectively.
If this were a civil lawsuit, the rulings on the defendants’ motions would be relatively simply, for CPLR 2217, 2221 and 5704 would apply. CPLR 2217 (b) states: "An ex parte motion shall be accompanied by an affidavit stating the result of any prior motion for similar relief and specifying the new facts, if any, that were not previously shown.” CPLR 2221 requires that a motion for leave to renew or reargue must be made to the Judge who issued the original order. "A motion made to other than a proper judge under this rule shall be transferred to the proper judge.” Here, then, the application for arrest warrants and a search warrant to a third Judge would be statutorily defective because it does not state in affidavit form that "a previous application had been made and denied”. Likewise, the second or third Judge to whom such application was made would be statutorily bound to refer it back to the original Judge. Also, while an appeal does not lie from a grant or denial of an "ex parte” order (CPLR 5701 [a]), the same "ex parte” application can be made to the Appellate Division pursuant to CPLR 5704 (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2217:5, C2217:6, pp 120-121).
The rule of law to apply in civil cases is sometimes referred to as the "law of the case doctrine”. As stated in Matter of Silverberg v Dillon (73 AD2d 838, 839-840): "It is fundamental *109 that one Judge may not review or overrule an order of another Judge of co-ordinate jurisdiction in the same proceeding (Matter of Wright v County of Monroe, 45 AD2d 932). The decision of the Judge who first rules in a case binds all courts of co-ordinate jurisdiction as 'the law of the case’ (Belski v New York Cent. R. R., 38 AD2d 882, 883), regardless of whether a formal order was entered (Collins, Inc. v Olsker-McLain, Ind., 22 AD2d 485, 489). The 'law of the case’ doctrine articulates the sound policy that, within various stages of the same litigation, an issue once judicially determined should end the matter so far as Judges of co-ordinate jurisdiction are concerned (Martin v City of Cohoes, 37 NY2d 162; Matter of McGrath v Gold, 36 NY2d 413).”
" 'Such a rule is essential to an orderly and seemly administration of justice in a court composed of several judges. It is equally applicable when an issue has been submitted to the first judge and has not yet been decided by him [or her]. To permit another judge to rush in and snatch decision from his [or her] mouth is not to be tolerated; it is a breach of comity which, if sanctioned, could only lead to unseemly conflicts of decision and to protracting the litigation.’ (Matter of Hines, 88 F.2d 423, 425.) (See, also, Platt v. New York & Sea Beach Ry. Co., 170 N.Y. 451, 458; Field v. Public Administrator, 10 A D 2d 97; Mount Sinai Hosp. v. Davis, 8 A D 2d 361; Mutual Life Ins. Co. of N. Y. v. 160 East 72nd St. Corp., 272 App. Div. 48; Kerekes v. Greenwood Props., 18 Misc 2d 84; Fried v. Lakeland Hide & Leather Co., 14 Misc 2d 305; People v. Doherty, 192 N.Y.S.2d 140.)” (Collins, Inc. v Olsker-McLain Indus., 22 AD2d 485, 489.)
Unfortunately, however, the Criminal Procedure Law does not contain any similar statutory language. No requirement is enumerated in the CPL that requires an "ex parte” applicant to inform a second Judge in affidavit form that the same application was made and denied. Nowhere does it state in the CPL that a motion to renew or reargue be made before the original Judge who granted or denied the order. Furthermore, no provision is made in the CPL giving the applicant the right to go to the Appellate Division to seek "ex parte” relief. Unfortunately, there are, likewise, no reported cases in New York that deal with these issues and the sanctions, if any, that should be imposed for the procedure used in this case.
Therefore, this court will now decide whether the procedure used to obtain these "ex parte” warrants is permissible and, even if permissible, whether this court will sanction it. While *110 this court agrees that the answer to these questions is in ordinary circumstances best left to the Legislature or to an appellate court, the integrity of the judicial process requires an answer pending action by the Legislature or a decision from the Appellate Division or the Court of Appeals. The police, the prosecutors, the defendants and the defense attorneys, alike, should know whether this procedure is permissible in this court.
First, although County Court has appellate jurisdiction over City Court in a judgment, sentence or order in a criminal case (CPL 450.60), at the time the County Court Judge signed the warrants in question, he did not have authority by statute or otherwise to exercise an appellate review of the warrants. When he signed the warrants, he was acting as a local Criminal Court Judge with no greater jurisdiction to sign the warrants than the City Court Judge who refused to sign them. All three Judges who were asked to sign the warrants were Judges of coordinate jurisdiction (see, CPL 690.05, 10.10 [3]; People v P. J. Video, 65 NY2d 566, revd on other grounds New York v P. J. Video, 475 US —, 89 L Ed 2d 871).
Second, while the "law of the case” doctrine is meant to prevent exactly what happened in this case, it is not an absolute rule without limitations. (See, People v Carson, 99 AD2d 664; Matter of Silverberg v Dillon, 73 AD2d 838, 840, supra.) In fact, it does not apply to "ex parte” applications for warrants at subsequent suppression hearings. (People v Guerra, 65 NY2d 60, 63.) The sound logic behind Guerra (supra) is that the warrant was applied for "ex parte” and the defendant should have a full opportunity to challenge the determination at an evidentiary hearing. (CPL 710.60.) Here, however, we are dealing not with a postarrest suppression hearing to review an "ex parte” determination, but rather we are dealing with an "ex parte” application followed by another "ex parte” application. Therefore, Guerra (65 NY2d 60, supra) does not resolve this issue.
However, the warrant requirements of the State and Federal Constitutions (NY Const, art I, § 12; US Const 4th Amend) are designed to seek out the detached and independent judgment of a neutral Magistrate; a Magistrate who will independently balance both "the interested viewpoint of those engaged in ferreting out crime and potential encroachments on the sanctity and privacy of the individual” (People v Hanlon, 36 NY2d 549, 558; see also, Johnson v United States, 333 US 10, 13-14).
*111 A neutral Magistrate is essential to "due process” to insure that everyone’s interests are protected — the People’s and the defendant’s. Any process that tries to eliminate a neutral Magistrate undermines "due process” and would destroy the public’s faith in the judicial process. Going from one Judge to another to obtain warrants is not seeking a neutral Magistrate. On the contrary, it gives the appearance of seeking a biased Magistrate and, in my opinion, is "judge shopping” and cannot be allowed.
To permit otherwise would sanction with judicial authority a police officer going to Judge after Judge until he found a Judge who would sign his search warrant applications. In a courthouse such as where this court sits, where there are currently sitting 7 City Court Judges, 6 County Court Judges and 18 Supreme Court Justices, a police officer could go from chambers to chambers, all 31 of them, until he found a Judge to sign his search warrant application.
Even if the CPL or case law is silent on this issue, "judge shopping” of this kind cannot be permitted. It is directly contrary to the statutory language of CPLR 2221 which provides that a renewal application be held before the original Judge (see also, People v Petgen, 81 AD2d 951, 952).
The evils to be avoided become even more apparent by the facts of this case. Here, the City Court Judge did not simply deny the application, but he specially told the police officer what he felt was wrong with it. The Judge further told the police officer what affidavit was needed to correct the application. He even suggested to the police officer that he seek the assistance of the District Attorney’s office in preparing, in the Judge’s opinion, a proper application. The police officer was then told by an Assistant District Attorney that he should get the requested affidavit and go back to the same Judge. Instead of following the Judge’s direction and the advice of the Assistant District Attorney, he sought out a second Judge and then a third Judge. To permit the police officer to simply ignore the Judge’s direction and seek out a more favorable Judge, undermines the integrity of the judicial process and opens the door to all kinds of abuse. Sound judicial procedure should not permit Judges, at the request of a police officer from passing upon and reviewing a matter already passed upon by another Judge of equal authority and coordinate jurisdiction. It matters not whether the original decision was correct. To hold otherwise encourages and approves of "judge shopping”. Such *112 a practice will not be permitted in this court until the Legislature or a higher court holds otherwise.
Therefore, it is the holding of this court that the evidence seized as a result of the search is hereby suppressed and the arrest warrants are vacated. The People may proceed on these cases as if they were arrests without warrants pursuant to CPL article 140 with all rights reserved to the defendants for further motions. In the alternative, they may attempt to obtain arrest warrants from the original Judge who refused to sign them, and then this court will hear the case on the merits.
In so holding, this court is not ruling substantively on the merits of the informations and the search warrant application.

 According to a procedure set up by the seven Rochester City Court Judges, the Part V Judge sits as the "ex parte” Judge for a four-week period to hear "ex parte” applications.